UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――

EMSURGCARE, *et al.*,

                        Plaintiffs,

         -v-

AVERY HAGER, *et al.*,

                        Defendants.

24-CV-6181 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    This case is about the proper payor of a medical bill incurred by Avery Hager after an emergency surgery in California in October 2018.  Plaintiffs Emsurgcare and Emergency Surgical Assistant first filed suit against Defendants Hager, Oxford Health Plans (NY), Inc., Oxford Health Insurance, Inc., and John Does 1-10, in the United States District Court for the Central District of California ("CDCA"), asserting claims pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), tortious interference with contractual relations, and tortious interference with prospective economic advantage.  After the CDCA court dismissed the case against Hager, it enforced a mandatory forum selection clause in Hager's benefit plan and transferred the case to this Court.

    Before the Court now is the motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the remaining defendants (collectively "Oxford").  For the reasons that follow, that motion is granted.

**I.  Background**

    Unless otherwise noted, the facts are drawn from Plaintiffs' amended complaint (ECF No. 1 at 20-29 ("AC")), the declaration of Michael Feizbakhsh—the doctor who is the sole shareholder of both Emsurgcare and Emergency Surgical Assistant (ECF No. 20-1 ("Feizbakhsh

1

Dec.")—the declaration of Plaintiffs' counsel (ECF No. 20-2 ("Stieglitz Dec.")), and the health insurance plan at issue.[1] (ECF No. 39 at 4-169 ("Plan")). *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015).

A.     **Health Benefits Plan**

Avery Hager "received [health] insurance through a fully funded health plan provided by" Oxford ("the Plan"). (AC ¶ 12.) Like most modern health insurance plans, the Plan sets certain rates for in-network (or "participating") providers, and it sets different, and often higher, rates for comparable treatment by out-of-network (or "non-participating") providers. (*See* Plan at 18-36.) Plaintiffs concede that they "are considered out of network" for the Plan. (AC ¶ 13.)

Regarding the assignment of benefits, the Plan states, in relevant part:

> You cannot assign any benefits under this Certificate or legal claims based on a denial of benefits to any person, corporation, or other organization. You cannot assign any monies due under this Certificate to any person, corporation or other organization unless it is an assignment to Your Provider for a surprise bill. . . . Any assignment of benefits or legal claims based on a denial of benefits by You other than monies due for a surprise bill will be void. Assignment means the transfer to

---

[1] Though Plaintiffs do not attach the Plan to their amended complaint or other filings, the Court may "consider documents that are integral to a plaintiff's claims—like plan documents in an ERISA case—whether or not attached to the complaint." *Royal v. Ret. Bd. of Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 19-CV-5164, 2020 WL 12787976, at *2 (S.D.N.Y. Nov. 20, 2020), *aff'd*, No. 20-4184, 2021 WL 4484925 (2d Cir. Oct. 1, 2021) (summary order) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). There is no question that the exact terms of the Plan are integral to Plaintiffs' ERISA benefits claim.

Plaintiffs state that they "do not in any way concede" that the Plan attached by Oxford is "accurate." (Opp. at 18-19.) However, the Plan has been authenticated by a sworn declaration by Jane Stalinski, United HealthCare's "Legal Services Specialist." (*See* ECF No. 39 ¶ 2.) Stalinski states that she "provide[s] and review[s] business records maintained by [United] and its affiliates, including Oxford, in the regular course of its business," and that she is familiar with the relevant business records in this case. (*Id.* ¶¶ 2, 4-6.) The Court thus relies on the language of the Plan rather than Plaintiffs' unsupported assertions of what is in the Plan in their amended complaint. *See Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) ("Where a document is referenced in a complaint, the document[] control[s] and this Court need not accept as true the allegations in the amended complaint." (quotation marks omitted)).

another person or to an organization of Your right to the services provided under this Certificate or Your right to collect money from Us for those services.

(Plan at 144.)

### B. Events at Issue

On October 24, 2018, Hager experienced a medical emergency and sought assistance at Cedars-Sinai Hospital in Los Angeles, California. (AC ¶ 15.) The "on call physician" diagnosed Hager with "cholecystitis (a serious infection caused by gall stones)" and told him that "he would need immediate treatment and surgery to resolve the infection by removing the gall bladder." (Feizbakhsh Dec. ¶¶ 24, 25.) Hager told the attending physician that he "did not want any of the physicians at Cedars-Sinai to provide the surgery" and that he wanted to receive treatment from Feizbakhsh instead.[2] (*See id.* ¶¶ 2, 25; *see also* AC ¶ 16.) Once they were called and arrived at the hospital, Plaintiffs' surgeons agreed with the diagnosis and performed the surgery to remove Hager's gall bladder. (Feizbakhsh Dec. ¶¶ 26-28.) Hager attended a follow-up appointment at Plaintiffs' offices where he signed several documents agreeing to be held responsible for services not covered by his insurer. (*See* AC ¶ 17.)

Plaintiffs billed Oxford $103,500 for the medical services they provided Hager on October 24, 2018. (*See id.* ¶ 19.) In early December 2018, Oxford paid Plaintiffs $3,475. (*Id.* ¶ 21.)

Oxford sent Hager a letter on May 28, 2019 stating that Emsurgcare was "a non-network provider under the terms of [Hager's] plan," and that "[a]fter reviewing the amount Emsurgcare[] charged for these services," Oxford determined that "this provider is charging a higher amount

---

[2] Plaintiffs are two companies entirely owned and controlled by Dr. Michael Farzin Feizbakhsh. (Feizbakhsh Dec. ¶ 1.) Dr. Feizbakhsh states that he is "a Bariatric and General Surgeon" in addition to "the sole shareholder of Emsurgcare and Emergency Surgical Assistant." (*Id.*)

than what is typically charged and accepted." (ECF No. 35-3 at 3.) Oxford told Hager: "We also notified Emsurgcare[] that we expect that you will not be billed for any amounts other than your copay, coinsurance or deductible and that we intend to take whatever measures are necessary to ensure that they do not hold you responsible for that balance." (*Id.*)

Plaintiffs now seek payment from Oxford for the remainder of the medical bill—totaling $100,025 plus interest. (*See* AC ¶ 70.)

### C. Procedural History

A predecessor to this action began in state court on June 22, 2022, but the current parties were first named in the amended complaint on February 1, 2024.[3] (*See* ECF No. 1 at 20; Stieglitz Dec. ¶¶ 11-12.) Oxford removed the case to federal court in CDCA on March 19, 2024. (ECF No. 1 at 1.) The CDCA court dismissed the case against Avery Hager and transferred the case against Oxford to this Court on August 8, 2024. (ECF No. 26 ("CDCA Opn.").) That court held that Plaintiffs had failed to state a breach of contract claim as to Hager because their practice of "balance billing," or charging a patient for the remaining costs after their insurance has rejected payment requests, was illegal under California law. (*See id.* at 3-4.) The CDCA court also held

---

[3] The procedural history of this action has not been fully explained in any filing in this Court. What is recounted in this Opinion comes from the 948-page tome filed in CDCA, at Docket Number 1.
 A "collection company representing" Emsurgcare and Emergency Surgical Assistants, "Modern Adjustment Bureau," first filed suit against Avery Hager, his wife Rebecca Hager, and 10 John Does, in the Superior Court of California, Los Angeles County, on June 22, 2022, to collect on the outstanding medical bill for Hager's procedure at Cedars-Sinai. (ECF No. 36 at 8; *see also* ECF No. 1 at 8.) On January 16, 2024, Modern Adjustment Bureau (through the same counsel now representing Plaintiffs) filed a motion for leave to amend its complaint in the state court, noting that: "To obtain proper payment for the services, [Emsurgcare and Emergency Surgical Assistants] assigned this matter to Modern Adjustment Bureau ('Plaintiff' or 'Modern'), who is the Plaintiff in this action." (ECF No. 1 at 47.) However, when counsel filed the amended complaint on February 1, 2024, the named plaintiffs were Emsurgcare and Emergency Surgical Assistants, not Modern Adjustment Bureau. (*See id.* at 20.) This change was not explained in the filings submitted to this Court.

that transfer pursuant to 28 U.S.C. § 1404(a) was proper as to the claims against Oxford because the health plan at issue contained a forum selection clause mandating that actions be brought in New York courts. (*See id.* at 6-8.)

Oxford filed a motion to dismiss in this Court on October 4, 2024 (ECF No. 34), as well as a memorandum of law in support of that motion (ECF No. 35 ("Mem.")). Plaintiffs opposed the motion on November 1, 2024. (ECF No. 36 ("Opp.").) And Oxford replied in further support of its motion on November 13, 2024. (ECF No. 37 ("Reply").)

## II.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will be dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In ruling on a motion to dismiss, the Court must accept the plaintiff's factual allegations as true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

## III.  Discussion

Because the CDCA court dismissed all claims against Hager (CDCA Opn. at 8), and Plaintiffs concede that their "tortious interference claim[s] cannot proceed at this juncture" as the CDCA court held that the contract between Plaintiffs and Hager was illegal and unenforceable.[4]

---

[4] Plaintiffs note that they are restating their tortious interference claims in the present case in order to "reserve their right to reassert this argument following an appeal with the Ninth

5

(Opp. at 10 nn.7-8, 19-20), the parties agree that the only remaining issue for this Court to decide is whether Plaintiffs have adequately stated an ERISA claim against Oxford (*see id.* at 6; Reply at 5).

To succeed on an ERISA benefits claim, "a plaintiff must show that (1) the plan is covered by ERISA, (2) plaintiff is a participant or beneficiary of the plan, and (3) plaintiff was wrongfully denied [the benefits] owed under the plan." *See Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009) (citations omitted). The Court agrees with Oxford that because Plaintiffs are not beneficiaries of the Plan and have failed to allege that they are proper assignees, Plaintiffs cannot succeed on their ERISA benefits claim as a matter of law.[5] (*See* Mem. at 14; Reply at 11-13.)

ERISA provides the "participant or beneficiary" of an ERISA-covered plan a right of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Second Circuit has made it clear that the term "'[b]eneficiary,' as it is used in ERISA, does not without more encompass healthcare providers." *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257 (2d Cir. 2015). While there is a "narrow exception" to this general rule where "a beneficiary has assigned his claim [to the healthcare provider] in exchange for health care," *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001), "ERISA-

---

Circuit . . . of the issue of the enforceability of [Plaintiffs'] contract with Mr. Hager." (Opp. at 19-20.)

[5] Because Plaintiffs fail to allege a necessary element of an ERISA benefits claim, the Court does not reach Oxford's alternative arguments that the suit was time-barred and that Plaintiffs have failed to allege that they were wrongfully denied benefits under the Plan. (*See* Mem. at 9, 14-15.)

governed plans my preclude their beneficiaries from making such assignments," *Karkare v. Int'l Ass'n of Bridge*, --- F.4th ----, 2025 WL 1618132, at *2 (2d Cir. June 9, 2025).

Plaintiffs state in a conclusory manner in the amended complaint that "Hager assigned the rights to" Plaintiffs. (AC ¶ 61.) This bare assertion alone is insufficient to plead assignment. "The actual terms of [Plaintiffs'] assignment agreement are not included in the Complaint . . . leaving the Court with only [Plaintiffs'] bare legal conclusion as to the validity and effect of any assignment agreement that may have been signed." *See Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.*, No. 19-CV-7972, 2020 WL 4895675, at *4 (S.D.N.Y. Aug. 19, 2020). And "simply asserting that claims under ERISA . . . have been assigned by the patients to [a healthcare provider] is insufficient by itself to give [the provider] a cause of action under the statute." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 361 (2d Cir. 2016). Plaintiffs do not explain how the assignment occurred, nor do they mention the Plan's provision for assignment—that a beneficiary complete a specific "assignment of benefits form," which must be mailed to both the provider and Oxford "at the address on [the beneficiary's] ID card." (Plan at 53-54.) Plaintiffs have not alleged that Hager completed or submitted that form or attempted to assign his benefits under the Plan in some other way. Thus, they have not alleged sufficient facts for the Court to determine that assignment ever occurred.

Further, even if Plaintiffs had alleged sufficient facts to support the conclusion that Hager had attempted to assign his benefits to them, the language of the Plan explicitly prohibits assignment in the vast majority of circumstances. The Plan states: "You cannot assign any benefits under this Certificate or legal claims based on a denial of benefits to any person, corporation, or other organization." (Plan at 144.) While there is an exception to the anti-assignment clause for "monies due for a surprise bill" (*id.*), Plaintiffs do not contend that their

charge to Hager would qualify as a surprise bill (*see* Opp. at 16), nor could they.  A "surprise bill" is defined as a bill the beneficiary receives:

> For services performed by a non-participating Physician at a participating Hospital or Ambulatory Surgical Center, when:
> - A participating Physician is unavailable at the time the health care services are performed;
> - A non-participating Physician performs services without Your knowledge; or
> - Unforeseen medical issues or services arise at the time the health care services are performed.

(Plan at 53.)  The Plan goes on to clarify:  "A surprise bill does not include a bill for health care services when a participating Physician is available and You elected to receive services from a non-participating Physician."  (*Id.*)

The services performed on Hager were with his knowledge (*see* AC ¶ 16), and no party alleges that "[u]nforeseen medical issues" arose while Plaintiffs were operating on Hager.  (*Cf.* Plan at 53.)  Indeed, Plaintiffs allege in their amended complaint that "Hager spoke to the attending" at Cedars-Sinai, "and specifically requested the medical services of" Feizbakhsh.  (*See* AC ¶ 16.)  Feizbakhsh, one of Plaintiffs' two doctors who performed the services on Hager, also stated in his declaration filed in CDCA that "Mr. Hager did not want any of the physicians at Cedars-Sinai to provide the surgery and asked the on call physician to contact me so that I could come in and consult and potentially provide the surgery."  (Feizbakhsh Dec. ¶ 25.)  Because Plaintiffs do not allege facts sufficient to establish that Cedars-Sinai was "a participating Hospital or Ambulatory Surgical Center" and that no other "participating Physician" was available to perform the operation on Hager on October 24, 2018, they cannot make use of the "surprise bill" exception to the Plan's anti-assignment clause.  (*Cf.* Plan at 53.)

8

Because Plaintiffs have failed to allege a necessary element of an ERISA benefits claim, Oxford's motion to dismiss is granted.[6]

### IV.  Leave to Amend

Plaintiffs request "that they be granted leave to amend to cure any defects" in their complaint "[i]f the Court finds any merit in Defendant Insurer's arguments." (Opp. at 20.)  Even when a party has already amended its pleading as of right, district courts are to "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Though the Court has discretion to decide whether to grant a subsequent motion for leave to amend, "that discretion must be exercised in terms of a justifying reason or reasons consonant with the liberalizing 'spirit of the Federal Rules.'" *United States ex rel. Maritime Admin. v. Continental Ill. Nat. Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962)).  Some of the reasons to deny a motion for leave to amend include "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman*, 371 U.S. at 182).

The only way Plaintiffs could amend their complaint without the amendment being futile is if they can plead additional facts that would support the conclusion that they were Hager's assignees under the Plan. *See I.V. Servs. of Am., Inc. v. Trs. of Am. Consulting Eng'rs Council Ins. Tr. Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998).  To plead this, they must allege sufficient facts showing either that their bill to Hager was a "surprise bill" under the Plan's definition of that term and Hager properly assigned his benefits to them (*see* Plan at 51-52), or that the anti-assignment provision is unenforceable or inapplicable under these circumstances.

---

[6] For the same reason, the claim is also dismissed as to the 1-10 John Doe Defendants who are unidentified "agents and/or employees" of Oxford. (*Cf.* AC ¶¶ 9-10.)

If Plaintiffs can allege specific facts about the surprise nature of their bill and proper assignment by Hager pursuant to the Plan's terms, or facts supporting the conclusion that the Plan's assignment terms did not govern the care they provided to Hager, Plaintiffs may move for leave to amend their complaint a second time by filing a proposed second amended complaint within fourteen days of the date of this Opinion and Order. If Plaintiffs notify the Court that they do not intend to move for leave to amend, or if they do not file a proposed second amended complaint within that time period, the Court will enter final judgment of dismissal, permitting an appeal to the United States Court of Appeals for the Second Circuit.

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 34 but not to enter judgment of dismissal or close the case.

SO ORDERED.

Dated: June 12, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge