**Seyfarth**

**Seyfarth Shaw LLP**
620 Eighth Avenue
New York, New York  10018
**T** (212) 218-5500
**F** (212) 218-5526
agenovese@seyfarth.com
T (212) 218-5621

www.seyfarth.com

June 26, 2026

**VIA ECF**

Hon. J. Paul Oetken
United States District Judge
United States Courthouse, Southern District of New York
40 Foley Square
New York, NY 10007

**Re:    *Emsurgcare, et al. v. Hager, et al.***
          **Civil Action No.: 1:24-cv-06181-JPO**
          ***Response to Court's Order at Dkt. 53 and Reply to Dkt. 52***

Dear Judge Oetken,

We represent Oxford Health Insurance, Inc. and Oxford Health Plans (NY), Inc. (collectively, "Oxford") in the above-referenced matter.  We respectfully submit this letter in response to the Court's Order at Dkt. 53 directing Oxford to address Plaintiffs Emsurgcare and Emergency Surgical Assistants' ("Plaintiffs") opposition (Dkt. 52) to Oxford's request for an extension of time to file a motion for attorneys' fees.

Plaintiffs contend that "Defendants' letter suggests a request for scheduling [but] hides an improper attempt to obtain this Court's permission to file a time-barred and foreclosed motion." (Dkt. 52 at 1.)  That assertion is incorrect.

*First*, Plaintiffs disregard that Oxford seeks attorneys' fees for work performed in connection with multiple appellate proceedings initiated by Plaintiffs.  This includes Plaintiffs' untimely appeal in the United States Court of Appeals for the Ninth Circuit, *Emsurgcare v. Hager*, No. 25-4511, 2025 WL 2965006, at *1 (9th Cir. Sept. 24, 2025) (holding that Ninth Circuit lacked jurisdiction over appeal filed 4 days after S.D.N.Y. judgment, but nearly one year after C.D. Cal. order being challenged and transferring case to the Second Circuit), which required effort by Oxford to oppose, as well as Plaintiffs' appeal to the United States Court of Appeals for the Second Circuit, *Emsurgcare v. Hager*, No. 25-1975-CV, 2026 WL 1378672, at *2 (2d Cir. May 18, 2026) (affirming judgment in favor of Appellees and noting that "Emsurgcare surprisingly does not present any arguments explaining why the decisions of either district court were wrong on the merits").  On May 18, 2026, the Second Circuit affirmed the judgment in full for Defendants.  (*Id.*; Dkt. 50 at 1, 4, 6.)

As to fees incurred on appeal, Oxford's request is timely.  Plaintiffs' argument that Oxford has failed to seek leave or is attempting to resurrect a "time-barred" motion is therefore misplaced. Nothing in Federal Rule of Civil Procedure 54 forecloses Oxford's forthcoming motion and multiple courts have held that a party may seek appellate fees in the district court within a reasonable time after the judgment of the court of appeals.  *See, e.g., L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, No. 00-CV-7394 ADS, 2013 WL 6388633, at *5 (E.D.N.Y. Dec. 5, 2013) (holding that "prevailing party must seek appellate attorneys' fees in an ERISA action within a reasonable period of time after the circuit's entry of final judgment" and that motion filed two days after deadline to seek certiorari expired—5.5 months after the court of appeals judgment—was timely); *Buckley v. Slocum Dickson Med. Grp., PLLC*, 111 F. Supp. 3d

 **Seyfarth**

218, 222 (N.D.N.Y. 2015) (quoting *L.I. Head Start* for the proposition that "'no part of [Federal Rule of Civil Procedure] 54 is applicable to requests for appellate attorneys' fees' in ERISA cases" and holding that fee motion filed six months after appellate judgment and three months after expiration of certiorari deadline was timely).  Here, Oxford seeks fees just over a month after the Second Circuit's judgment, and only a few days after the mandate filed on this Court's docket.

*Second*, with respect to trial court work, Plaintiffs attempt to minimize the procedural disorder they created in this case.  Plaintiffs amended their pleadings years after the case commenced to add Oxford, and did so in an improper forum, requiring Oxford to remove the action to federal court and successfully move to transfer this ERISA action to this Court.  Even after transfer, Plaintiffs continued to create confusion by filing not one, but two notices of appeal in the Ninth Circuit (on November 22, 2024, and July 18, 2025) both after the case had already been transferred to this Court on August 14, 2024.

These actions created legitimate uncertainty as to which court would exercise jurisdiction and whether proceedings in this Court would remain operative.  That uncertainty bears directly on the forthcoming motion for fees.

There is no dispute that the Court entered judgment in Oxford's favor on July 14, 2025 (Dkts. 40, 45, 46.)  Four days later, however, Plaintiffs filed an appeal in the Ninth Circuit, which was not reflected on this Court's docket.  *Emsurgcare*, 2025 WL 2965006, at *1.  Plaintiff then filed a separate appeal in the Second Circuit, while the appeal in the Ninth Circuit was pending. As a result, Oxford was required to expend resources responding to duplicative and procedurally improper appellate activity, further complicating a fees motion.

Plaintiffs rely on *Tancredi v. Metropolitan Life Insurance Co.*, 378 F.3d 220 (2d Cir. 2004), arguing that Oxford cannot demonstrate excusable neglect to pursue any fees.[1]  (Dkt. 52 at 2–3.) That argument is premature without full briefing before the Court and, in any event, incomplete.

As *Tancredi* states, courts evaluating excusable neglect consider: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Id.* at 228 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).  The Second Circuit further emphasized that excusable neglect "is an elastic concept" and an equitable determination based on all relevant circumstances.  *Id.*

The factors favor Oxford:

- There is no prejudice to Plaintiffs.  Oxford is timely seeking fees with respect to appellate work, and addressing all fees in the same motion promotes efficiency for the Court and the Parties rather than disruption.

- The delay stems from Plaintiffs' own conduct, including filing multiple, overlapping, and in some instances improper appeals in different circuits, creating uncertainty as to jurisdiction and finality.

---

[1] As noted above, Plaintiff fails to differentiate between pre- and post-appeal work.



- Oxford acted diligently and in good faith throughout this litigation.  It properly removed this ERISA action, successfully moved to transfer the case based on a forum selection clause in the ERISA plan, responded to Plaintiffs' improper Ninth Circuit appeals post-transfer (thereby incurring additional fees), and prevailed in opposing Plaintiffs' Second Circuit appeal—an appeal the Second Circuit itself found lacking in merit as against Oxford, but one that Oxford nonetheless had to defend against.

Under these circumstances, Plaintiffs' attempt to invoke *Tancredi* ignores the equitable framework and the realities of this case.

Oxford respectfully submits that its forthcoming fee application will be supported by law and fact.  *See Katalyst Sec., LLC v. Marker Therapeutics, Inc.*, No. 21-CV-08005-LTS, 2023 WL 22610, at *2 (S.D.N.Y. Jan. 3, 2023) (confirming in the Second Circuit the district court may extend Rule 54 deadlines where the "failure to act" was the result of excusable neglect); *Cush-Crawford v. Adchem Corp.*, 234 F. Supp. 2d 207, 211 (E.D.N.Y. 2002) (explaining Rule 54 applies to applications for attorneys' fees at the trial level, not to applications for appellate attorneys' fees); *Bolin v. Harvard Prot. Servs., Inc.,* 277 F. App'x 102, 105 (2d Cir. 2008) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect.").

Plaintiffs' effort to disregard the post-appeal trigger for fee applications, as well as the procedural complexities they themselves created for non-appellate work, amounts to an attempt to avoid the consequences of their own litigation strategy in this ERISA action.

Plaintiffs chose to pursue an ERISA claim in four different courts, two at the Circuit level, and with them, the potential benefits of fee-shifting under ERISA.  That choice necessarily carried the reciprocal risk and provided Plaintiffs with notice that fees could be awarded against them. Their decision to litigate an ERISA claim across multiple courts, mostly improperly, in a manner that created procedural uncertainty should not now be used as both sword and shield.

Oxford respectfully requests that the Court set Oxford's opening brief deadline to July 15, 2026 to allow it to move for attorneys' fees.  We thank Your Honor for your attention to this matter.

Respectfully submitted,

SEYFARTH SHAW LLP

Amanda L. Genovese

cc: All counsel of record